UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

BONITA L. LINDSTROM,

                Plaintiff,

      -vs-                               08-CV-935-JTC

UNITED STATES POSTAL SERVICE,[1]

                Defendant .

———————————————————————

By order of Chief United States District Judge William M. Skretny dated     , 2011 (Item  ), this matter has been reassigned to the undersigned for all further proceedings.

Plaintiff Bonita L. Lindstrom commenced this action *pro se* on December 18, 2008, by filing a form complaint for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"); and the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 ("NYSHRL").[2]  Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of the complaint in its entirety (Item 36).

For the reasons that follow, defendant's motion is granted.

———————————————————

[1]In her *pro se* complaint (which has not been amended despite retention of counsel), plaintiff named the United States Postal Service as defendant.  However, "the only proper defendant in a Title VII action against the Postal Service is the Postmaster General."  *Lamb v. United States Postal Service*, 852 F.2d 845, 846 (5th Cir. 1988); *see* 42 U.S.C. § 2000e-16(c) ("the head of the department, agency, or unit, as appropriate, shall be the defendant"); *see also Jaremka v. U.S. Gov. Dept. Veterans Affairs*, 2007 WL 2580493 *1 (W.D.N.Y. Sep. 4, 2007) (dismissing federal employee's *pro se* complaint for failure to name proper party).

[2]Plaintiff concedes that the United States and its agencies are not subject to suit under the ADA or the NYSHRL, and that any claims alleging discrimination based on disability may only be brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. ("Rehabilitation Act").  The court therefore construes the plaintiff's *pro se* complaint to assert a claim under the Rehabilitation Act.

## BACKGROUND

The following background facts are derived from the pleadings and submissions on file, including the parties' respective statements of fact submitted pursuant to Rule 56.1 of the Local Rules of Civil Procedure for the Western District of New York.[3]

Plaintiff began her employment with the Postal Service in May 1986, working as a Letter Carrier in the City of Buffalo, New York.  Toward the latter part of 1991, plaintiff began to develop symptoms of bursitis in her right shoulder, and she submitted an "occupational disease" claim to the Department of Labor's Office of Workers' Compensation Programs ("OWCP").  By letter dated August 16, 1993, OWCP notified plaintiff that her claim had been accepted for the condition of bursitis (Item 38-1).  The letter also stated that, although plaintiff's doctor indicated the possibility of a diagnosis of carpal tunnel syndrome, that condition was not accepted as a basis for plaintiff's workers' compensation claim because it was not substantiated by objective findings (*id.*; *see also* Deft. Local Rule 56.1 Statement, at ¶¶ 1-4).

Meanwhile, in October 1992, plaintiff filed the first of several discrimination charges with the Postal Service's Equal Employment Opportunity ("EEO") division.  In this charge (designated Case No. 1R-1162-92), plaintiff claimed that she was discriminated against on the basis of gender and disability when her work schedule was changed on several dates in February and March 1992, which caused her to use her own annual and sick leave.  The

---

[3]Local Rule 56(a)(1) requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried," and Local Rule 56(a)(2) requires that the party opposing the motion include in its opposition papers "a short and concise statement of the additional material facts as to which it is contended there exists a genuine issue to be tried."

EEO denied this claim by written decision dated February 11, 1993, finding that plaintiff failed to raise her scheduling complaints with an EEO Counselor in a timely manner, as required by the Equal Employment Opportunity Commission ("EEOC") regulations governing the processing of EEO complaints (Item 39-2, pp. 2-3).  This determination was affirmed by the EEOC in a written decision dated June 4, 1993 (*id.* at pp. 4-7).

On June 14, 1994, plaintiff filed a second EEO charge (designated Case No. 4B-140-1053-94) claiming that her supervisors discriminated against her because of her gender and disability by refusing to sign an insurance form.  On July 26, 1994, plaintiff entered a settlement agreement with the Postal Service, by which she accepted a transfer to the position of Central Forwarding System ("CFS") Mark-up Clerk, effective August 6, 1994, "[i]n full and final settlement of all EEO complaints," including Case No. 4B-140-1053-94 (Item 1, p. 38).  The agreement was signed on behalf of the Postal Service by Anthony Pacella, Manager of Customer Service Operations (*id.*).  As part of the settlement, plaintiff waived her rights to further appeal of her complaint through the EEO process (*id.*).

Plaintiff worked as an Automated Mark-up Clerk in the CFS Unit from August 1994 until May 1999, when she bid for and was transferred to the position of Distribution Window Mark-up Clerk.  During that period, plaintiff's supervisors were Olga Wolkenstein and Marlene Hoerner (Item 37, ¶¶ 12-14).  Also during that period, plaintiff filed the following additional EEO charges:

### 1.     Charge No. 4B-140-1112-95

In this charge, dated and filed September 28, 1995, plaintiff claimed disability discrimination and retaliation for her prior EEO activity, based on Ms. Wolkenstein's denial

of her request for a "temporary change of schedule" submitted on July 25, 1995, while subsequently approving a similar request by a female co-worker. Plaintiff further charged that on August 3, 1995, Ms. Wolkenstein refused to sign a sick leave request form for the previous evening, interrogated her on the workroom floor regarding the leave request, and gave her an "official discussion" when she requested a union steward (*see* Item 40-2). She also claimed that Ms. Wolkenstein, Mr. Pacella, and Joseph Liberti (manager of the CFS Unit) had "continuously" harassed her since as far back as her first EEO charge in October 1992, or at least since her transfer to the CFS Unit in August 1994 (*id.*).

### 2.    Charge No. 4B-140-1008-96

In this charge, dated and filed November 23, 1995, plaintiff alleged that she was discriminated against on the basis of her disability and gender, and in retaliation for her prior EEO activity, on several occasions in August and September 1995. She claims, among other things, that during this time period Ms. Wolkenstein denied her request for leave without pay due to unsafe working conditions, and refused to call an ambulance for her when she complained of chest pains; that Ms. Wolkenstein made a slanderous comment about plaintiff's daughter; that plaintiff received notice to report for a Fitness for Duty (FFD) examination when she had already been cleared for duty by her doctor, and was threatened with discipline for not reporting for the FFD exam; and that she was questioned about being late for work, told not to talk to co-workers while "load/sweeping," and told not to bring her hip sack onto the workroom floor, while other workers were not subjected to the same treatment (*see* Item 40-4).

### 3.    Charge No. 4B-140-0026-97

On January 3, 1997, plaintiff filed an EEO charge alleging disability discrimination and retaliation for prior EEO activity based on a series of incidents in November and December 1996, in which management scheduled her to work on her designated holiday (Thanksgiving eve), denied her request for Family and Medical Leave Act (FMLA) sick leave, and scheduled her for another  FFD exam on December 3, 1996 (Item 41-1).  She filed a subsequent charge on February 20, 1997 (No. 4B-140-0036-97), alleging that she received a letter from Mr. Pacella advising her that she would be scheduled to work up to forty hours per week based on the results of the December 3, 1996 FFD exam, which she claimed violated her doctor's medical restrictions (Item 41-2).  These two EEO charges were subsequently consolidated as No. 4B-140-0026-97 (*see* Item 41-3).

### 4.    Charge No. 4B-140-0070-98

In this charge, dated and filed June 20, 1998, plaintiff alleged that she was discriminated against on the basis of her disability and in retaliation for prior EEO activity when, on April 13, 1998, she was notified that she was rated "ineligible" on the Maintenance Mechanic, MPE-07 examination that she took on March 28, 1998 (*see* Item 42-4).[4]

In January 2001, following the conclusion of the EEO's investigation of each of these matters, plaintiff requested an evidentiary hearing before an EEOC Administrative Judge ("AJ") (*see* Item 43-2).  The matters were assigned to AJ Ricardo Cuevas, who

---

[4]On March 16, 2000, plaintiff was injured in a non-work-related auto accident, which resulted in two herniated disks and a lifting restriction of fifteen pounds (*see* Item 37-2, pp. 10- 11; Item 37-3, p. 15). Her last day of work with the Postal Service was March 16, 2000 (*see id.*).

consolidated all four cases and scheduled a hearing for January 2003 (*see id*; *see also* Item 43-4). The hearing was subsequently adjourned upon the agency's determination that plaintiff's claims were to be subsumed under the EEOC class action in *Glover v. United States Postal Serv.*, EEOC Appeal No. 01A04428 (April 23, 2001) (order certifying class comprised of individuals with disabilities in permanent rehabilitation duty positions) (available in Westlaw at 2001 WL 427464 (E.E.O.C.)). However, the AJ in *Glover* eventually determined that plaintiff's claims were not encompassed by the class certification order, and plaintiff's case was remanded to AJ Cuevas. Upon remand, the agency moved for decision without a hearing, and on September 8, 2006, a preliminary telephonic conference was held before AJ Cuevas, at which plaintiff and the Postal Service stipulated to the issues remaining for decision (*see* Item 43-5).

On April 25, 2008, AJ Cuevas issued a "Commission Decision on Summary Judgment" dismissing each of plaintiff's claims for failure to prove discrimination based on disability, sex, or retaliation for engaging in protected activity (Item 44). On September 16, 2008, the EEOC issued an order affirming the AJ's decision as the agency's final order, finding that "a preponderance of the evidence does not establish that discrimination occurred." Item 44-1, p. 5. The order also advised plaintiff of her right to file a civil action in federal court within ninety days from the date she received notice of the decision. This action followed.

On her form *pro se* complaint, plaintiff checked the spaces indicating that the action is being brought for discrimination in employment pursuant to Title VII, the ADA, and the NYSHRL (Item 1, pp. 1-2), based on the following conduct:

- Failure to provide her with reasonable accommodations so she can perform the essential functions of her job.

- Harassment on the basis of her sex.

- Harassment on the basis of unequal terms and conditions of her employment.

- Retaliation because she complained about discrimination or harassment directed toward her.

- Creating a hostile work environment.

(*Id.* at 4).  As supporting facts, plaintiff primarily reiterates the claims she asserted in her multiple EEO charges (*id.* at 7-8), as described above, and has attached to the complaint a copy of the EEOC's September 16, 2008 decision on appeal (*id.* at 9-14) as well as copies of the four EEO complaints consolidated for hearing and decision (*id.* at 16-38).

Upon completion of discovery, defendant moved for summary judgment[5] on the following grounds:

1.    Failure to exhaust administrative remedies, or state a *prima facie* case, with respect to plaintiff's gender discrimination claim.

---

[5]Defendant also moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss:  (1) plaintiff's claims asserted under the ADA or the NYHRL, for failure to state a claim upon which relief can be granted; (2) plaintiff's gender and disability discrimination claims based on the changes in her work schedule during January–March 1992, for failure to exhaust administrative remedies; and (3) plaintiff's claims for relief based on any of the matters raised in her 1994 EEO charges, as precluded by the terms of the July 26, 1994 settlement agreement.  As noted above (*see* note 2, *infra*), plaintiff has conceded to dismissal of the ADA and NYSHRL claims upon the court's agreement to construe those claims as having been asserted under the Rehabilitation Act.  Further, in her response to defendant's summary judgment motion, plaintiff has conceded that her claims based on incidents occurring in January–March 1992 are unexhausted, and that her claims based on incidents occurring in 1994 are precluded by the terms of the settlement agreement (*see* Item 53, pp. 5-6).  In addition, in their submissions with respect to the remaining claims, the parties have presented matters outside the pleadings and have had "reasonable opportunity to present all the material that is pertinent to" a motion for summary judgment.  Fed. R. Civ. P. 12(d).  Accordingly, the court will treat each of the remaining grounds for dismissal raised by defendant's motion as grounds for summary judgment pursuant to Rule 56.

2.      Failure to establish a *prima facie* case of disability discrimination under the Rehabilitation Act.

3.      Failure to establish the elements of a hostile work environment claim.

4.      Failure to establish a *prima facie* case of retaliation.

Each of these grounds is discussed in turn below.

## DISCUSSION

## I.      Summary Judgment

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is material if it "might affect the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see also Hamilton Bank, N.A. v. Kookmin Bank*, 245 F.3d 82, 89 (2d Cir. 2001).

In reaching a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 574 (2d Cir. 2005).  The moving party bears the initial burden of establishing that there are no genuine issues of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  That burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once this initial showing is made, the non-moving party may defeat summary judgment only by producing evidence of specific

facts that raise a genuine issue for trial.  *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).  Mere conclusory allegations are insufficient and "[t]here must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts'" to defeat a motion for summary judgment.  *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 500 U.S. 928 (1991).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential Svc., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Mfg Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).  "In examining the record it must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute."  *Gallo*, 22 F.2d at 1224 (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

In discrimination cases, courts must exercise "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001).  Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact."  *McLee v. Chrysler*

*Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), *quoted in Holtz*, 258 F.3d at 69; *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).   The ultimate test for summary judgment in an employment discrimination case, as in any other case, "is whether the evidence can reasonably support a verdict in plaintiff's favor."   *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir.2000); *see also Karim v. Dep't of Educ. of the City of New York*, 2011 WL 809568, at *4 (E.D.N.Y. Mar. 2, 2011).

## II.    Gender Discrimination/Exhaustion of Administrative Remedies

Construed generously, plaintiff's claim that the Postal Service discriminated against her because of her gender is essentially based on the following allegations of differential treatment:

1.    She was treated less favorably than male co-worker Peter Guarino because Mr. Guarino was out of work for five weeks in 1995 and was never sent for a FFD exam (*see* Item 1, p. 21, ¶ C(2)), and because Mr. Guarino was never required to provide medical substantiation for a FMLA absence (*see id.* at 29).

2.    She was treated less favorably than male coworker Robert Rose because Mr. Rose received a specific numeric grade on the 1998 Maintenance Mechanic exam, whereas plaintiff did not (*see* Item 38 (Plaintiff's Dep.), pp. 148-50).

Defendant contends that plaintiff's gender discrimination claim must be dismissed because these instances of alleged sex discrimination were not raised at the administrative level, but rather appeared for the first time during discovery in this federal court action. Defendant also contends that even if the court should find these claims to be adequately exhausted, plaintiff is unable to establish a *prima facie* case of gender discrimination.

-10-

As a prerequisite to bringing an employment discrimination action in federal court under either Title VII or the Rehabilitation Act, a federal employee must comply with the administrative claim requirements of the EEOC regulations. *See Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998). Under the regulations, an employee who believes she has been discriminated against "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved after a mandatory counseling period, the employee may then file a formal written administrative complaint with the EEOC within fifteen days of the EEO counselor's final interview with the employee. 29 C.F.R. §§ 1614.105(d), 1614.106(a),(b). The employee may then file a civil action within 90 days of notice of a final agency decision on her EEO complaint, or after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(a), (b).

The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "[E]xhaustion of administrative remedies through the EEOC stands as 'an essential element of Title VII's statutory scheme,' . . . and one with which defendants are entitled to insist that plaintiffs comply." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (quoting *Butts v. City of New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)).

Thus, a district court may refuse to hear discrimination claims brought under Title VII or the Rehabilitation Act if those claims were neither included in a timely EEOC charge, nor "reasonably related" to the discrimination alleged in the EEOC charge. *Williams v. New York City Housing Authority*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Butts*, 990 F.2d at 1401). A claim is considered to be reasonably related to the conduct alleged in the EEOC charge if "the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination . . . ." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002).

The record in this case reveals that, in her request for counseling prior to filing her November 1995 EEO charge, plaintiff stated that Mr. Guarino was treated more favorably "because of his sex" when "he was out of work for 5 weeks and was never sent for a fitness for duty exam when he returned to work" (Item 1, p. 21, ¶ C(2)). In addition, in her factual statement in support of her January 1997 charge, plaintiff stated that "[t]here are also other employees who have FMLA approved conditions who have never been called at home after they called in ill and notified that they have to submit a note for that incident. One such employee is Peter Guarino." Item 1, p. 29.

However, the court's review of the record further reveals that no allegations of gender discrimination were included in plaintiff's April 9, 2001 response to the EEO's pre-hearing interrogatories requesting further information about her allegations of discrimination based on sex, nor did she identify any instances of sex discrimination

occurring after May 5, 1994[6] (*see* Item 43-3, pp. 4-5).  In addition, the matters addressed

in the investigative affidavits (Items 40-3, 40-5, 40-6, 40-7, and 41) and the extensive

report (Item 41-3) filed in connection with the agency's investigation of the facts underlying

the matters consolidated for hearing focused primarily on plaintiff's charges of disability

discrimination and retaliation for her substantial EEO activity, with little if any discussion

of facts related to any claims of unfavorable treatment based on gender.  Likewise, there

was no discussion of gender bias claims in the September 8, 2006 stipulation of issues

requiring decision by the AJ (*see* Item 43-5), and consequently these issues were not

addressed by AJ Cuevas in his thorough and comprehensive April 25, 2008 decision, or

by the EEOC on appeal.

Similarly, plaintiff failed to exhaust her administrative remedies with respect to her

claim that she was treated less favorably than a male coworker in terms of the grading of

the 1998 Maintenance Mechanic exam.  The court's review of plaintiff's allegations in EEO

Charge No. 4B-140-0070-98 reveals no reference whatsoever to differential treatment

based upon gender, and in the space provided on the EEO charge form for "Type of

Discrimination Alleged," plaintiff checked the boxes indicating "Retaliation" and "Disability,"

and did not check the box indicating "Sex" (*see* Item 42-4).  In addition, the statements in

the affidavits filed in connection with the agency's investigation of the facts regarding this

charge (Items 43, 43-1) once again focus on her claim that she was rated "ineligible" on

---

[6]As noted above, plaintiff has conceded that her claims based on incidents occurring prior to that date are either unexhausted or precluded by the terms of the July 26, 1994, settlement agreement.

the exam due to her disability and in retaliation for her prior EEO activity, with no mention at all of her claim of gender bias.

Based on this record, it is apparent to the court that plaintiff's allegations about favorable treatment accorded to male employees because of their gender with respect to reporting for FFD exams, providing medical substantiation for FMLA leave, or scoring on the 1998 Maintenance Mechanic Exam were not adequately presented to the agency for consideration, nor can they be found to have fallen within the reasonably expected scope of the EEO's investigation of the claims set forth in the various charges which were ultimately consolidated for decision by AJ Cuevas.  Accordingly, plaintiff's Title VII gender discrimination claims based on these allegations must be dismissed for failure to exhaust administrative remedies.

## III.    Disability Discrimination

As noted above, the exclusive remedy for Postal Service employees claiming discrimination based on their disability is the Rehabilitation Act, which provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a); *see Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998); *Mattison v. Potter*, 515 F. Supp. 2d 356, 375 (W.D.N.Y. 2007).  Disability discrimination claims under this Act are analyzed by applying the familiar three-step evidentiary burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*,  411 U.S. 792, 802-04 (1973), for Title VII claims. *Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d

Cir.), *cert. denied*, 537 U.S. 813 (2002); *see also Verdi v. Potter*, 2010 WL 502959, *4

(E.D.N.Y. Feb. 9, 2010); *Mattison*, 515 F. Supp. 2d at 370-71.

Under this framework, the plaintiff has the initial burden to establish, by a

preponderance of the evidence, a *prima facie* case of unlawful discrimination.  *Texas Dept.*

*Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If the plaintiff makes out

a *prima facie* case, the burden of production shifts to the employer to articulate a

legitimate, non-discriminatory reason for the employment action.  *McDonnell Douglas*, 411

U.S. at 802.  Once the employer meets this burden, the presumption of discrimination

created by the *prima facie* case "drops out of the picture," *St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 510-11 (1993), and the defendant   "will be entitled to summary

judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding

of prohibited discrimination."  *James*, 233 F.3d at 154 (citing *St. Mary's Honor Ctr.*, 509

U.S. at  510-514).  As explained by the Supreme Court:

> Although intermediate evidentiary burdens shift back and forth under
> this framework, "[t]he ultimate burden of persuading the trier of fact that the
> defendant intentionally discriminated against the plaintiff remains at all times
> with the plaintiff."  And in attempting to satisfy this burden, the plaintiff-once
> the employer produces sufficient evidence to support a nondiscriminatory
> explanation for its decision-must be afforded "the opportunity to prove by a
> preponderance of the evidence that the legitimate reasons offered by the
> defendant were not its true reasons, but were a pretext for discrimination."

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (quoting

*Burdine*, 450 U.S. at 253).

In order to establish a *prima facie* case of disability discrimination in violation of the

Rehabilitation Act, plaintiff must show that:  (1) she is "disabled" within the meaning of the

Act; (2) she is otherwise qualified to perform the essential functions of her job; (3) she

suffered an adverse employment action based on her disability; and (4) the employer is subject to the Act.  *See Verdi*,  2010 WL 502959, at *5 (citing *Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994), *cert. denied*, 513 U.S. 1147 (1995)).  Defendant contends that plaintiff's disability discrimination claim fails at the *prima facie* stage because she cannot establish that she was disabled within the meaning of the Rehabilitation Act.

At the time of the events in question,[7] the term "individual with a disability" was defined in the Rehabilitation Act as a person who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B) (effective prior to Aug. 6, 1998); *see also* 29 C.F.R. § 1630.2(g) (effective prior to May 23, 2011).   In evaluating whether an individual's impairment substantially limits a major life activity, courts consider "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."   29 C.F.R. § 1630.2(j)(2), *quoted in Verdi*, 2010 WL 502959, at *5; *see also Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999).  Major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i); *see also Colwell*, 158 F.3d at 642 (sleeping, sitting, standing, lifting, and reaching have also been identified as major life

---

[7]Because the events giving rise to plaintiff's administratively exhausted Rehabilitation Act claims occurred between August 1995 and April 1998, the law in effect prior to January 1, 2009 (the effective date of the ADA Amendments Act of 2008) applies.  *See Wega v. Center for Disability Rights, Inc.*, 395 Fed. Appx. 782, 784 n 1. (2d Cir. 2010) ("[T]here is no indication that Congress intended the ADA Amendments to have retroactive effect.").

activities) (citing *Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir.1998)).  According to

the Second Circuit:

> In general, an impairment "substantially limits" a major life activity if it renders
> a person either (i) "unable" to perform a major life "activity that the average
> person in the general population can perform"; or (ii) "[s]ignificantly restricted
> as to the condition, manner or duration under which an individual can
> perform [that] activity" in comparison to "the average person in the general
> population."

*Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) (quoting 29

C.F.R.§ 1630.2(j)(1)).

In this case, plaintiff has submitted no doctors' reports, treatment notes, diagnostic

studies, or any other medical evidence to support the claim that her bursitis and bilateral

carpal tunnel syndrome significantly restricted her ability to perform any of the functions

associated with a major life activity.  She testified at her deposition that her doctor limited

her to a forty-hour work week, and restricted her to lifting thirty-five pounds and carrying

fifteen pounds.  She claims that these restrictions substantially limited her ability to work as

a Letter Carrier, and that the Postal Service has an ample record of her impairment.

However, in order to be considered substantially limited in the life activity of working,

plaintiff must show that she was "significantly restricted in the ability to perform either a

class of jobs or a broad range of jobs in various classes as compared to the average person

having comparable training, skills and abilities. The inability to perform a single, particular

job does not constitute a substantial limitation in the major life activity of working."  29

C.F.R. § 1630.2(j)(3)(i); *see Colwell*, 158 F.3d at 643; *Heilweil*, 32 F.3d at 723 ("An

impairment that disqualifies a person from only a narrow range of jobs is not considered a

substantially limiting one."). The regulations also list the following additional factors to consider in determining whether an individual is substantially limited in the ability to work:

> (A) The geographical area to which the individual has reasonable access;
>
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C). In the absence of any medical or vocational evidence to assist the trier of fact in this determination, plaintiff cannot show that her physical impairments substantially limited her ability to work, as required to establish a *prima facie* case of disability discrimination under the Rehabilitation Act. *See Kirkendall v. United Parcel Service, Inc.*, 964 F. Supp. 106, 111 (W.D.N.Y. 1997) (citing cases holding "that a plaintiff's failure to come forward with such evidence warrants granting summary judgment in favor of the defendant.").

In addition, several courts have held as a matter of law that a lifting restriction such as the one claimed by plaintiff, "particularly when compared to an average person's abilities, 'does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity.'" *Id.* (quoting *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (25 pound lifting limitation), *cert. denied*, 520 U.S. 1240 (1997)); *see also Curry v. Federal Express Corporation*, 2006 WL 839426, at *9 (W.D.N.Y. Mar. 28, 2006) (lifting restriction which prohibited plaintiff performing her job found to be insufficient

in and of itself to create genuine issue as to whether she was disabled under ADA); *Strassberg v. Hilton Hotels Corp*., 1997 WL 531314, at *2 (S.D.N.Y. August 28, 1997) (30 lb. lifting restriction not "significant"), *aff'd*, 173 F.3d 846  (2d Cir. 1999).

In any event, plaintiff has acknowledged that her transfer to the position of Mark-up Clerk in August 1994 as consideration for settlement of all EEO charges filed prior to that date precludes her from raising any claims in this action based on allegedly discriminatory actions taken against her during the time she worked as a Letter Carrier.   She also acknowledges that, even with the restrictions imposed by her doctor, she was able to perform the essential functions of her job as Mark-up Clerk and, later, Window Clerk, until the time of her auto accident in March 2000.  It is undisputed that plaintiff engaged in several outside activities during the time she claims she was substantially limited in the life activity of working.  For example, she testified at her deposition that she worked as a volunteer at a local fire company beginning in 1993, and became certified as an Emergency Medical Technician ("EMT") some time in1996 or 1997.  She also sold Mary Kay cosmetics during that same period.

Based on this record, no reasonable jury could find that plaintiff's bursitis and bilateral carpal tunnel syndrome substantially limited a major life activity at any time pertinent to the events at issue in this matter, as required to establish that she was "an individual with a disability" within the meaning of the Rehabilitation Act.  Accordingly, the court finds no genuine issue as to any material fact in this regard, and defendant is entitled to summary judgment as a matter of law dismissing plaintiff's disability discrimination claim.

IV.    **Hostile Work Environment**

Plaintiff also claims that the discriminatory treatment she received during her employment with the Postal Service was so abusive as to amount to a hostile work environment in violation of Title VII.   Defendant contends that, even accepting plaintiff's allegations as true, the conduct complained of fails as a matter of law to meet the threshold requirements for a hostile work environment claim.

In order to establish this claim, plaintiff must ultimately show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).   As recently explained by the Second Circuit, this "severe or pervasive" standard has both an objective and a subjective element: "[T]he misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010) (internal quotation marks and citation omitted).   In making this determination, the court should "review the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* (quoting *Harris*, 510 U.S. at 23).

In addition, the Second Circuit has cautioned that it is "important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage

or correlation to the claimed ground of discrimination." *Alfano*, 294 F.3d at 377.   In other

words, to succeed on her hostile work environment claim, plaintiff must "demonstrate that

she was subjected to the hostility because of her membership in a protected class."

*Brennan v. Metro. Opera Ass'n Inc.*, 192 F.3d 310, 318 (2d Cir.1999).   "Otherwise, the

federal courts will become a court of personnel appeals." *Alfano*, 294 F.3d at 377.   "Title

VII does not establish a 'general civility code' for the American workplace." *Petrosino v. Bell

Atlantic*, 385 F .3d 210, 223 (2d Cir. 2004) (quoting *Oncale v. Sundowner Offshore Servs.,

Inc.*, 523 U.S. 75, 81 (1998)).   "While Title VII 'protects employees from improper

discriminatory intimidation[,] it does not reach so far as to protect plaintiffs from

undiscriminating intimidation by bullish and abusive supervisors.'" *Murphy v. Board of Educ.

of Rochester City School Dist.*, 273 F. Supp. 2d 292, 311-12 (W.D.N.Y. 2003) (quoting

*Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000)), *aff'd*, 106

Fed.Appx. 746 (2004).

In this case, the circumstances alleged to have created an abusive work environment

consist primarily of conduct on the part of plaintiff's supervisor, Ms. Wolkenstein, essentially

as outlined in EEO Charge No. 4B-140-1008-96.   To reiterate, plaintiff claims that on

various occasions in August and September 1995, Ms. Wolkenstein denied plaintiff's

requests for schedule changes and leave time, refused to call an ambulance when plaintiff

experienced chest pains, made a slanderous comment about plaintiff's daughter, made

plaintiff report for Fitness for Duty exams, and told plaintiff not to talk to co-workers.

However, as discussed above, plaintiff does not allege that she was subjected to this

treatment because of her gender, and she has submitted no evidence whatsoever to show

or suggest that Ms. Wolkenstein's conduct in this regard was in any way related to plaintiff's disability.

Moreover, plaintiff has failed to come forward with any showing of specific facts as to how these actions could be considered "extreme [enough] to amount to a change in the terms and conditions of employment . . . ."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Indeed, several courts have found similar allegations insufficient as a matter of law to support an actionable hostile environment claim.  *See, e.g., Bush v. Fordham University*, 452 F. Supp. 2d 394, 413-14 (S.D.N.Y. 2006) (finding insufficient allegations that plaintiff's supervisor altered her time sheets, threatened to call security for no reason, did not give the plaintiff her phone messages, and asked plaintiff's daughter if her mother was mean to her); *De la Cruz v. City of New York*, ___F. Supp. 2d___, 2011 WL 1453796, at *18 (S.D.N.Y. Apr. 7, 2011) (finding insufficient allegations of work reassignment, changes in work schedule, increased scrutiny of his work, and supervisor's stray remarks regarding seniority and physical fitness).  In the absence of any direct or circumstantial evidence to show or suggest that Ms. Wolkenstein's conduct toward plaintiff was "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse," *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997), or that the conduct alleged was in any way motivated by discrimination based on plaintiff's gender or disability, no reasonable jury could find the circumstances of plaintiff's employment to amount to the creation of an objectively hostile or abusive work environment actionable under Title VII.  Simply put, even assuming the veracity of plaintiff's allegations regarding defendant's "abusive" conduct, it is not of the frequency, severity, or nature necessary for a reasonable employee to find a workplace so "permeated with discriminatory

-22-

intimidation, ridicule, and insult" as to "subvert the plaintiff's ability to function . . . ." *Alfano*, 294 F. 3d at 380 (quoting *Brennan*, 192 F.3d at 318).

Based on this analysis, the court finds that plaintiff has failed to come forward with evidence sufficient to support a verdict in her favor on her hostile work environment claim. Accordingly, defendant is entitled to summary judgment as matter of law dismissing this claim.

## V.    Retaliation

Title VII expressly prohibits employers from retaliating against an employee for, among other things, filing a discrimination charge. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . .  because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). Title VII retaliation claims also are governed by the *McDonnell Douglas* burden-shifting analysis. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). As recently reiterated by the Second Circuit:

> First, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the employer knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. The plaintiff's burden in this regard is "*de minimis*," and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.

*Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citations omitted). Once the plaintiff makes out a *prima facie* case of retaliation, the burden of

production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503 (S.D.N.Y. Sept. 24, 2010) (citing cases).  If the defendant meets this burden, the presumption of retaliation created by the plaintiff's *prima facie* showing dissipates, and plaintiff must then come forward with evidence sufficient to present an inference that the proffered reason is a mere pretext for retaliation. *Id.*; *see also Hicks*, 593 F. 3d at 164.

It is not disputed that plaintiff has satisfied the first element of her *prima facie* showing, since it is well recognized that filing an administrative charge of discrimination is "protected activity" within the purview of Title VII. *See, e.g., Cunningham v. Consolidated Edison Inc.*, 2006 WL 842914, at *15-16 (E.D.N.Y. Mar. 28, 2006).  As set forth above, plaintiff has a long history of filing  EEO charges complaining of her treatment during her employment with the Postal Service, dating back to October 1992, and including five formal charges filed between 1995 and 1998, the time period which is the focus of the claims in this action.

Defendant contends that plaintiff cannot establish the second *prima facie* element–*i.e.*, that the employer had knowledge of the protected activity–because, at least with respect to certain charges,  the supervisory employees named were unaware that the charges had been filed before the alleged adverse action was taken.  However, even if the supervisor who carried out the adverse action did not know about plaintiff's protected activity, "the 'knowledge' requirement is met if the legal entity was on notice." *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 92 (2d Cir. 2011) (citing *Gordon v. New York City Board of Education*, 232 F.3d 111, 113-14 (2d Cir. 2000)).  As

stated in *Gordon*, "[n]either [the Second Circuit] nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."  *Gordon*, 232 F.3d at 116; *see also Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 210 (2d Cir. 2006) (even though plaintiff's supervisor was unaware of plaintiff's prior protected activity, knowledge imputed to employer by submissions made in opposition to agency charge).  There is no question in this case that, while the particular supervisors named in the charges filed by plaintiff in 1995-98 may not have had specific knowledge of her EEO activity, the Postal Service had "general corporate knowledge" well in advance of the adverse employment action alleged.

With respect to the third *prima facie* element, defendant contends that plaintiff has failed to establish that the employment action complained of in each of her charges was "materially adverse," which in the context of Title VII's prohibition against retaliation  "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted).

> We speak of material adversity because we believe it is important to separate significant from trivial harms.  . . .  An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.  . . .  The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms.  It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

*Id.* (internal quotation marks and citations omitted).

In *Hicks*, the Second Circuit explained that the supreme court's decision in *White* "broadened the scope of Title VII's anti-retaliation provision." *Hicks*, 593 F.3d at 169. As a result, a plaintiff claiming retaliation under Title VII no longer needs to show that the alleged retaliatory act had some bearing on the terms or conditions of employment; rather, "the proper inquiry now is whether 'the employer's actions [were] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White*, 548 U.S. at 57). The court in *Hicks* also made clear that the assessment of whether an action is materially adverse must be made not in the abstract, but in light of all the surrounding circumstances:

> [B]y considering the perspective of a *reasonable* employee, *White* bespeaks an objective standard. The standard may be objective, but context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Therefore, an act that would be immaterial in some situations is material in others. For example, a schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. And of course context can diminish as well as enlarge material effect.

*Id*. at 165 (internal alterations, quotation marks, and citations omitted). In addition, "in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Id*. (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006), *cert. denied*, 549 U.S. 1342 (2007)).

As discussed above, in this case plaintiff complained of several different forms of discriminatory employment action on the part of her supervisors between July 1995 and

April 1998, summarized in the EEOC's September 16, 2008 order (Item 44-1, pp. 1-3) as follows:  denial of requests for temporary change of schedule, denial of requests for sick leave, giving her an "official discussion" regarding proper completion of leave request forms, denial of leave without pay, refusing to call an ambulance when she experienced chest pains while at work, telling her fellow employees that her daughter was on drugs, scheduling plaintiff for FFD exams, requiring medical substantiation and threatening discipline for failing to report for an FFD exam, questioning her about reporting late for work, telling her not to talk to co-workers, telling her not to bring her "hip sack" to work, requiring medical substantiation for leave on a pre-scheduled holiday, denial of FMLA sick leave, scheduling her for more than 40 hours per week despite medical restrictions, and rating her "ineligible" on the March 1998 MPE-07 exam.  Certainly, the frequency of plaintiff's EEO complaints could provide circumstantial evidence to support a jury finding that the actions of Postal Service supervisors have not substantially interfered with plaintiff's unfettered access to Title VII's remedial mechanisms.  However, when considered in the aggregate within the context of the circumstances surrounding the allegations in each of the EEO charges filed by plaintiff, and in light of the case law interpreting Title VII's anti-retaliation provisions, reasonable jurors could disagree as to whether these actions were harmful to the point that they could dissuade a reasonable employee from making or supporting a charge of discrimination.

Based on this record, the court finds that plaintiff has made a *de minimis* showing of having suffered a "materially adverse" employment action to satisfy her burden of production on this *prima facie* element.

The final consideration in the *prima facie* retaliation inquiry is whether plaintiff can establish a causal connection between the protected activity and the adverse action. In this regard, the Second Circuit has consistently held that the causation element of a retaliation claim can be satisfied at the *prima facie* stage either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117. Plaintiff here has come forward with no direct evidence, beyond mere speculation and conclusory allegations, to show or suggest that her supervisors harbored any discriminatory or retaliatory animus toward her. Accordingly, the court's analysis is limited to determining whether plaintiff can point to sufficient circumstantial evidence to establish a causal link between her protected activity and the employer's adverse action. To make this determination, the court once again turns its focus to the circumstances surrounding the timing and substance of each of the administrative charges at issue.

**Charge No. 4B-140-1112-95**

This charge was filed on September 28, 1995 (*see* Item 40-2). As summarized by the EEOC in its September 16, 2008 decision, plaintiff claimed in this charge that (1) on July 25, 1995, her request for a temporary "change of schedule" was denied; (2) on August 3, 1995, her supervisor denied her request for sick leave for the previous evening, interrogated her on the workroom floor about completing a sick leave form, and gave her an "official discussion." Item 44-1, p.1. According to plaintiff, these actions were taken by

Ms. Wolkenstein in retaliation for plaintiff's prior EEO activity, dating as far back as 1992 and resolved by her transfer from the position of Letter Carrier to the position of Window Clerk as a consequence of the July 1994 settlement agreement.

Clearly, the lapse of more than one year between the full resolution of plaintiff's prior EEO activity in July 1994 and the employment action taken by Ms. Wolkenstein in August 1995 is too large a gap to give rise to any reasonable inference of retaliation. Indeed, cases that have accepted mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case have uniformly held that the temporal proximity must be "very close." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001), *quoted in Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). While there is no bright-line rule defining "very close" temporal proximity, "[m]ost of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) (citing cases).

In the absence of any other direct or circumstantial evidence of a causal connection between the employment action taken by Ms. Wolkenstein in July and August 1995 and the resolution of plaintiff's prior protected activity in July 1994, plaintiff cannot rely on the conduct complained of in Charge No. 4B-140-1112-95 to establish a *prima facie* claim of retaliation.

**Charge No. 4B-140-1008-96**

As summarized by the EEOC in its September 16, 2008 decision, plaintiff claimed in this charge that: (1) on August 15, 1995, she was denied leave without pay and management refused to call an ambulance for her; (2) on August 17, 1995, all employees were told only management could answer the door of the CFS unit and that her daughter was on drugs; (3) on August 29, 1995, she was scheduled for a Fitness for Duty Examination; (4) on August 30, 1995, she was asked to provide medical substantiation for not reporting for the FFD Examination; (5) on August 31, 1995, she received a letter threatening discipline for not reporting for the FFD Examination; (6) on September 9, 1995, she was questioned about being late for work on the previous day; and (7) on September 19, 1995, she was told not to talk to co-workers while ledge loading and not to bring her hip sack onto the workroom floor. *See* Item 44-1, pp. 1-2; *see also* Item 40-4.

Plaintiff filed this EEO charge on November 23, 1995, approximately two months after she filed Charge No. 4B-140-1112-95. Accordingly, plaintiff's claim that the adverse employment action taken in August and September 1995 was in retaliation for her prior EEO activity is subject to the same temporal proximity analysis as her claim with regard to Charge No. 4B-140-1112-95. As discussed above, a lapse of more than one year between the culmination of prior protected activity in July 1994 and the adverse employment action in August and September 1995 is clearly too large a gap to give rise to an inference of causation.

Plaintiff attempts to overcome the lack of temporal proximity by pointing to her allegations in Charge No. 4B-140-1008-96 that she was treated differently than other similarly situated employees. However, beyond these conclusory allegations, there is no

evidence in the record presently before the court to support a reasonable inference that the differential treatment was in any way causally linked to her protected activity.   In the absence of any such evidence, no reasonable jury could find that the conduct complained of in Charge No. 4B-140-1008-96 violated Title VII's anti-retaliation provision.

### Charge No. 4B-140-0026-97

This charge encompasses two separate EEO charges filed on January 31 and February 20, 1997, which were subsequently consolidated under Charge No. 4B-140-0026-97.   As summarized by the EEOC, plaintiff alleged the following adverse employment actions: (1) on November 19,  1996, she was made aware that she was scheduled to work on her pre-scheduled Thanksgiving eve holiday unless she provided medical substantiation indicating she could not work that day; (2) her request for FMLA sick leave for December 2, 1996, was denied and she was charged with leave without pay and required to provide medical substantiation for the absence; (3) she was scheduled for a FFD examination on December 3, 1996, and (4) on January 10, 1997, she was made aware that she would be scheduled to work up to forty hours per week in disregard of restrictions set by her personal physician.   She claimed that these actions were taken against her by her supervisors, Marlene Hoerner, and Ed Lott, under direct orders from their managers, Anthony Pacella and Dennis Gawron, and in retaliation for her prior EEO activity.   *See* Item 44-1, p. 2; *see also* Items 41-1 and 41-2.

Once again, the court finds insufficient temporal proximity between plaintiff's prior protected activity in 1992-94 and late 1995, and the adverse action taken in November and December 1996, to give rise to an inference of causation in support of plaintiff's *prima facie*

-31-

case of retaliation.  In the absence of any additional circumstantial evidence in the summary judgment record, beyond plaintiff's conclusory allegations that similarly situated employees were treated differently, the court finds no factual basis for a reasonable juror to find that the protected activity and the adverse action were in any way causally linked.  Accordingly, plaintiff cannot rely on the conduct complained of in Charge No. 4B-140-0026-97 to establish a *prima facie* claim of retaliation.

### Charge No. 4B-140-0070- 98

In this charge, filed on June 20, 1998, plaintiff claimed that on April 13, 1998, she received notice that she was rated "ineligible" on the Maintenance Mechanic, MPE-07 examination which she took on March 28, 1998.  She claimed that the Postal Service employee who administered the exam, Annette Lewandowski, discriminated against her because of her disability.  There are no allegations in Charge No. 4B-140-0070-98 of retaliatory conduct on the part of Ms. Lewandowski or any other employee.  *See* Item 42-4.

Even if the complaint in this case could be construed to state a retaliation claim based on the conduct alleged in this charge, plaintiff has come forward with no evidence, circumstantial or otherwise, to support a reasonable inference of a causal link between the "ineligible" rating she received in April 1998 and her prior EEO activity in early 1997.  Accordingly, plaintiff cannot rely on the conduct complained of in Charge No. 4B-140-0026-97 to establish a *prima facie* claim of retaliation.

Based on this analysis, the court finds that plaintiff has failed to satisfy her *prima facie* burden of coming forward with sufficient evidence to establish a causal connection between the protected activity of filing discrimination charges with the EEO and the adverse

employment action complained of.  As a result, no reasonable jury could render a verdict in plaintiff's favor on her claim brought under Title VII's anti-retaliation provision, and defendant is entitled to summary judgment dismissing that claim as a matter of law.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Item 36) is granted in full, and the complaint is dismissed in its entirety.  The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July 18, 2011
p:\pending\2008\08-935.july7.2011